REINSURANCE AGENCY, INC., a corporation, Plaintiff,

v.

LIBERTY NATIONAL INSURANCE CO., a corporation, Defendant.

No. 2172.

United States District Court
D. Idaho, N. D.

Dec. 21, 1959.

Elder, Elder & Mitchell, Coeur d'Alene, Idaho, for plaintiff.

Hawkins & Miller, Coeur d'Alene, Idaho, for defendant.

CLARK, Chief Judge.

The plaintiff herein is seeking to recover five percent commission on premiums paid to defendant by its agent, The Transatlantic Casualty Underwriters Inc., an insurance company selling contracts of insurance in Germany.

It is the claim of the plaintiff that this business was obtained by it through negotiations covering the period from early in 1955 until September 1955 and that it was understood and agreed that if the plaintiff was successful in obtaining this business for the defendant a five percent commission would be paid the plaintiff on the premiums received from this business.

First; the defendant denies any such agreement.

Second; denies the authenticity of the written statement confirming the agreement (exhibit 1)

Third; alleges that there was no consideration for the agreement.

Fourth; denies that the plaintiff acted as broker for the defendant for the business transacted.

Fifth; alleges that payments of five percent commission on the premiums that were made to the plaintiff were made by mistake.

Sixth; the defendant also contends that in September 1956, by order of the District Court of the Eighth Judicial District of the State of Idaho in and for the County of Kootenai, the defendant was, upon application of the Commissioner of Insurance of the State of Idaho, placed in receivership and rehabilitated, and the defendant also contends that any agreement which may have been executed between the plaintiff and defendant was effectually terminated by virtue of the receivership and subsequent rehabilitation and formation of a new company to operate the defendant corporation.

Seventh; defendant contends that plaintiff is estopped from collaterally attacking the judgment and decrees of said State District Court, and

The defendant seeks to collect the money that was paid as commissions prior to this action.

As to the contentions of the defendant, numbered one to five inclusive, set out above, there can be no question but that defendant Liberty National Insurance Company entered into a contract with Transatlantic Casualty Underwriters Inc., whereby Transatlantic was appointed defendant's agent in Germany for the purpose of writing Automobile Insurance. Reinsurance Agency Inc., was the broker who was responsible for obtaining this business for the defendant. After reviewing the oral testimony and exhibits numbered two to twelve it is very clear to the Court that the plaintiff was quite active in placing this insurance with the defendant and that it was agreed that as long as this contract was in force between the defendant and Transatlantic, the plaintiff was to be recognized as the broker and was to receive a five percent brokerage fee, or commission.

The only way this agreement could be terminated was by a cancellation of the contract between the defendant and Transatlantic (exhibit 33) and in the event the contract was terminated the plaintiff was to have ninety days notice (exhibit 1). There can be little question

but that the time fixed for notice was to give the plaintiff that much time to place the insurance elsewhere. The Court cannot accept the strained construction that this was a cancellation of the contract between the plaintiff and defendant.

The defendant accepted the applications for insurance from the Transatlantic, and enjoyed the fruits of the plaintiff's labor. The Court construes the letter (exhibit 1) as a letter confirming what had taken place in connection with the efforts of the plaintiff to place the German business with the defendant. The letter is as follows:

"September 1, 1955

"Mr. Andrew J. Helmick
"Reinsurance Agency Inc.,
"309 W. Jackson Blvd.
"Chicago 6, Illinois

"Re. Transatlantic Casualty Underwriters Inc.

"Dear Andy:

"We wish to advise that formal agency agreement has been made between this Company and the Transatlantic Casualty Underwriters, Inc. of St. Louis Missouri, as regards their business in Germany.

"In accordance with our understanding, you are to be recognized as the broker of record on this account, and the 5% brokerage fee will be sent you each month after monthly payment is received by us from the Transatlantic Casualty Underwriters.

"We regret that Mr. Lange was unable to set up his own company but on the other hand, we are pleased to have received the entire account rather than just a portion of it through reinsurance.

"We appreciate that you gave us the first opportunity to work on this account.

"You can consider this agreement in force until further notice, and in the event of termination of same,

you will receive the usual ninety day notice.

"With kind personal regards,

"Sincerely yours,
"Liberty National Insurance Co.
"J. T. Chapman, Vice President
"JTC: s"

Taking into consideration the contents of this letter and the events related in the oral testimony, and other documentary evidence, the statement in the letter "you can consider this agreement in force until further notice" can only apply to the agreement between the defendant and Transatlantic, and that in the event of the termination of that contract the plaintiff was to receive ninety days notice.

The denial of the agreement and the denial of the authenticity of the written statement confirming the agreement (exhibit 1) are not supported by the record here.

The Court having heard the oral testimony and considered the exhibits is of the opinion that consideration is well proven. The plaintiff did a great deal of work and incurred much expense in getting this business for the defendant. Plaintiff had every right to expect consideration for the efforts put forth in obtaining this contract between the Transatlantic and the defendant.

There is no merit in contention numbered four.

After a study of the entire record the Court can see no merit in contention numbered five. The defendant received the premiums from the date of the contract (exhibit 22) and never questioned the five percent commission or brokerage fee.

There can be no question but what the Board of Directors of the defendant authorized J. T. Chapman, vice president, to manage that part of its business pertaining to casualty insurance (Tran. 82 and 83) and that later he made a report to it in regard to writing automobile insurance in Germany and as reflected by the minutes, on motion of Director

Paul Shrader and seconded by R. W. Nelson (executive vice president) the Company was authorized to enter West Germany (Tran. 85). The defendant was fully aware that the contract was made with the Transatlantic, and that it handled the insurance under the contract and received the premiums therefor (Tran. 88) and were also aware that a five percent commission was being paid the plaintiff from September 1955, the first payment being dated February 13, 1956 (exhibit 42). This payment was inclosed in a letter and the letter of transmittal was taken from the files of the defendant and brought to Court by Ralph W. Nelson (executive vice president) and marked as exhibit 43 and is as follows:

"February 17, 1956

"Mr. Andrew J. Helmick
"Reinsurance Agency Inc.
"309 W. Jackson Blvd.
"Chicago 6, Illinois

"Re. Transatlantic Casualty Underwriters Inc. Munich Germany

"Dear Andy;

"I sincerely regret the oversight in setting up your commission in connection with the above account which you arranged with us.

"I have therefore made arrangements with Miss Putnam, our agency accounting supervisor to send to you each month your 5% commission.

"You will find enclosed a check in payment of the commission on the first three months' business written by them. They started in October, and for the months of October, November and December wrote a total of $19,074.76. The commission check enclosed amounts to $953.73.

"As stated above, Miss Putnam will send this to you regularly each month from now on, and I trust that this procedure will meet with your approval.

"We indeed appreciate the opportunity of having secured this account as it looks as though it is going to be quite profitable, and if you run across any more similar deals we would indeed be interested in participating in same.

"With kind personal regards,

"Sincerely yours
"Liberty National Insurance Co.

"J. T. Chapman, Vice President.
"JTC: s
"Enc."

The check was signed by one of the officers of the defendant company, D. E. Benson, then followed, every month, a check for the commission, March $769.-45; April $843.25; May $1,141.32; June $1,939.23; July $1,893.09; August $1,759.63; September $1,378.55; October $1,780.19. These checks were signed by various officers of the defendant company including Ralph W. Nelson (executive vice president). It is unbelievable that anyone connected with the defendant that signed these checks did not know what they were in payment of, and the fact that this letter was in the files of the company, along with the other evidence would not permit any officer or director of the defendant to say "we don't know anything about a contract for a five percent commission to the Plaintiff". The defendant took a long time to find its mistake, in fact there was no mistake. It was not until the defendant was taken over temporarily by the Commissioner of Insurance that any question was raised about this.

■ As to the contention numbered six, the evidence shows that the defendant company was placed in receivership but this Court cannot agree that the agreement with the plaintiff was effectually terminated. It must be remembered that the Rehabilitator did not attempt to cancel the contract with the Transatlantic but continued to collect the premiums on the German business. The defendant was not liquidated but turned back to the defendant company when it satisfied the Commissioner of Insurance that it was in such financial condition that it could continue the business with-

out difficulty. The fact that a letter (exhibit 11) was sent to the plaintiff advising it that "as of December 31st, we must discontinue to recognize you as broker of record in connection with the above account" was an attempt to cancel out defendant's obligation to pay in accordance with its contract without cancelling out the right to receive the fruits of plaintiff's labor. It was trying to blow hot and cold with the same breath. Before it could relieve itself from the contract it was necessary for the defendant to cancel out its right to receive, as well as its obligation to pay.

There was an agreement on the part of the defendant to pay a five percent brokerage fee on the business with the Transatlantic. The exhibits and oral testimony leaves no question in the Court's mind but that this business was obtained for the defendant through the efforts of the plaintiff. From the evidence this appears to be a rather large commission, however, that was the commission agreed upon and it is not for this Court to arbitrarily change it.

All authority in connection with the conduct of the business was taken away from the officers of the defendant company during the period of rehabilitation by reason of an injunction issued by the State Court, and payments of the commission claimed here should not and could not rightfully be made except by or on order of the Rehabilitator from the date of the injunction, September 24, 1956 to May 28, 1957 when the rehabilitation was terminated by order of the State Court and the business turned back to the Liberty National Insurance Company.

The commissions claimed during the period of rehabilitation together with the check numbered 7860 dated October 19, 1956 in the amount of $1,780.19 will be disallowed. It appears from the evidence that the last mentioned check was issued and delivered without authority of the Rehabilitator.

The balance due June 1957 to February 1959 as five percent commission will be allowed in the sum of $22,335.94. No interest will be allowed.

Counsel for the plaintiff will prepare the necessary findings of fact, conclusions of law and judgment, in accordance with the views expressed herein, and submit copies to opposing counsel and present the original to the Court for approval.